IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VINCENT E. SMITH, #R11677, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16-cv-00913-NJR |
| | ) |
| JOHN COE, MARTIN PHILLIPS, | ) |
| ANNE TREDWAY, STEVE DUNCAN, | ) |
| LORI CUNNINGHAM, | ) |
| and PHILLIP SHICKER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Vincent E. Smith, an inmate who is currently incarcerated at Lawrence Correctional Center ("Lawrence"), brings this *pro se* action for alleged violations of his constitutional rights under 42 U.S.C. § 1983 (Doc. 2). He alleges that the conduct giving rise to his claims occurred at Lawrence. In a prior Memorandum and Order, the Court severed Smith's claims into two separate cases. (*See* CM/ECF S.D. Ill., Case No. 16-cv-00745-MJR). This Memorandum and Order addresses Counts Three through Seven—the counts severed into the new case. These five counts allege deliberate indifference to serious medical needs and a failure to respond to grievances regarding Smith's medical condition. In connection with these claims Smith has named as defendants John Coe, Martin Phillips, Anne Tredway, Steve Duncan, and Lori Cunningham. Smith also makes reference to Phillip Shicker. Smith seeks monetary compensation for his injuries.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner

complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

### THE COMPLAINT

Smith alleges that in July 2014, a guard beat him during a search of his cell by Orange Crush tactical team members (Doc. 2 at 6). During the assault, his head was slammed into concrete on more than one occasion (*Id.*). After the assault, Smith was given ice for the lump on his head and accompanying headache (*Id.* at 7). Smith alleges that he never had head pain prior to the assault (*Id.*). He subsequently visited the medical unit on numerous occasions for head pain and vision issues (*Id.* at 7-11). Initially, in September 2014, a doctor opined that the head pain could be caused by an ingrown hair (*Id.* at 7). Smith grieved this diagnosis because he felt it was incorrect (*Id.*). In September 2014, he experienced head pain, dizziness, blurry vision, and pressure in his head and chest, for which he pressed the emergency button in his cell (*Id.*).

According to the complaint, in October 2014, Smith saw Defendant Doctor Coe and informed him that he was suffering head pain as a result of the assault (*Id.* at 7-8). Smith alleges that Coe's ongoing course of treatment for his head pain was unsuccessful (*Id.* at 9-11). He saw Coe on numerous occasions for pain and pressure in his head, as well as accompanying vision impairment (*Id.*). Coe investigated the symptoms by pressing on the side of Smith's head and face and by shining a light in his eyes on multiple occasions (*Id.*). Each time, Coe stated that the head pain was likely the result of a swollen artery in Smith's head (*Id.*). Coe attempted to triage the condition by prescribing a variety of medications, which Smith continued to report were not working (*Id.*). On one visit, Coe told Smith that due to the budget he could not organize an MRI

or other examination, but that once Smith was out of custody he should seek a functional MRI—the only way to apparently detect the underlying problem (Doc. 1-1 at 25-26). Coe indicated that absent such a scan, the best he could do was to provide relief from the symptoms with medication (Doc. 2 at 9-11). Coe then asked Smith what type of medication he would like (*Id.*). At some point, the course of treatment included medication and a permit to have ice packs for his head (*Id.* at 9-11). Smith mentioned that Coe recorded incorrect information in his medical record, and that he sought to correct it (*Id.* at 7-8).

Smith alleges that Defendant Duncan was aware of the lack of proper care he was receiving via written grievances and a verbal conversation (*Id.* at 7, 10). Despite being on notice of the ongoing issue, Duncan did not take any actions to ensure that Smith received more comprehensive care (*Id.*). Instead, the grievance forms show that Duncan deemed Smith's complaints non-emergency and directed him to use the normal grievance channels (Doc. 2-1 at 2-3, 5-6, 8-9, 18-21). Likewise, Defendant Cunningham was aware of the lack of adequate care because Smith filed a written grievance directed to her (Doc. 2 at 10; Doc. 2-1 at 31-32, 36-37). She did not respond (*Id.*). Smith verbally notified Defendant Tredway of his medical issues and Tredway averred that she would look in to the problem, but Smith opined that no action was ever taken (Doc. 2 at 11).

Smith also alleges that he sent a written grievance to Phillip Shicker,[1] the Illinois Department of Corrections ("IDOC") medical director, but received no response (*Id.*). Further,

---

[1] In the "list of defendants" section of the complaint, Smith identifies "defendant Phillips" as the health care administrator at Lawrence. He also makes a single mention of "defendant Phillips" in the body of the complaint. However, in the body of the complaint Smith also states a claim against "Phillip Shicker," an individual who is not listed in the caption or the list of defendants. Based on the information available, the Court is treating "defendant Phillips" as distinct from "Phillip Shicker." Treating "defendant Phillips" as distinct from "Phillip Shicker," the Court is dismissing "defendant Phillips" from the action because the body of the complaint does not contain sufficient factual mention of this defendant to properly state a claim against him. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption").

he submitted grievances seeking the names of the officers involved in his assault, but he was denied access to that information (*Id.*).

## DISCUSSION

The Court is using the same designation of counts set forth in the previous severance order, thus the pertinent claims are:

**Count 3:** Eighth Amendment deliberate indifference to a serious medical condition claim against Duncan for failing to take action in response to Smith's written and verbal complaints that his head pain was not being adequately treated;

**Count 4:** Eighth Amendment deliberate indifference for failure to treat a serious medical condition claim against Coe for pursuing a course of treatment he knew was ineffective and for declining access to treatment he opined would be effective in identifying the cause of Smith's head pain;

**Count 5:** Eighth Amendment deliberate indifference claim against Cunningham for failing to address Smith's written grievance about the adequacy of medical care he was receiving for his head pain;

**Count 6:** Eighth Amendment deliberate indifference claim against Tredway for failing to follow through on a verbal promise to look into the adequacy of medical care being provided for Smith's head pain; and,

**Count 7:** Eighth and Fourteenth Amendment claims against Phillip Shicker for failing to respond to Smith's written grievance about the adequacy of the care he was receiving for his head pain.

Counts Three through Six will proceed against the defendants name in association with those counts. Count Seven will be dismissed without prejudice.

All of the claims in this action relate to allegations of deliberate indifference to a serious medical need, so the Court will begin with a basic overview of applicable precedent. The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. U.S. CONST., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435 (7th

Cir. 2010). Prison conditions that deprive inmates of basic human needs, such as inadequate nutrition, health, or safety, may constitute cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates deliberate indifference to the serious medical needs of an inmate. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). To establish deliberate indifference to a medical condition, a prisoner must show a condition that is sufficiently serious (objective component) and that an official acted with a sufficiently culpable state of mind in failing to address the condition (subjective component). *Id.* Whether an injury is serious enough is a very fact specific inquiry—seriousness may be shown if an ordinary doctor opined an injury warranted treatment, if an injury significantly impacted an individual's daily activities, or if an injury caused chronic or substantial pain, among other things. *Id.*

As to the subjective component, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002). If an official reasonably responds to a risk, even if harm was not averted, deliberate indifference does not exist. *Id.* A claim for medical negligence does not amount to deliberate indifference. *Gutierrez*, 111 F.3d at 1369. Additionally, a reasonable response differs depending on the capacity of the alleged wrongdoer. A non-medical prison employee—one who for example handles grievances, or supervises prison operations—will generally not be liable for deliberate indifference if he or she believes the prisoner is receiving adequate medical care, or takes steps to verify that the inmate is receiving care. *See Greeno v. Daley*, 414 F.3d 645, 655-57 (7th Cir. 2005). Individual

liability may arise, however, on behalf of a non-medical defendant if the defendant is made aware of a specific constitutional violation via correspondence from the inmate and the individual declines to take any action to address the situation. *See Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015). Simply put, a prison official may not escape liability by turning a blind eye to serious harms. *Id.* at 781 ("deliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or 'turns a blind eye' to it"). At the screening stage of § 1915A review, the district court must consider if "discovery will shed light on whether [. . .] the grievance defendants took the needed action to investigate [a plaintiff's] grievances, and reasonably relied on the judgment of medical professionals" in responding to a given grievance. *Id.* at 782.

In a case where an inmate claims a delay in treatment as opposed to a total denial, the plaintiff must offer some evidence that the delay caused lasting harm. *See Conley v. Birch*, 796 F.3d 742, 749 (7th Cir. 2015) (finding that a plaintiff may be able to prove to a jury that a delay constituted deliberate indifference where the treating doctor testified that the bones in the hand would begin fusing quickly after an injury, and thus permanent damage may occur quickly). There is no bright line standard for how much of a delay is too much. There is also no bright line standard for how much care must be provided to avoid liability for deliberate indifference. A doctor or prison official is not required to follow every recommended course of care with precision, but ignoring recommendations of an outside provider may constitute deliberate indifference if doing so would result in the provision of such inadequate care that no reasonable medical official would agree with the course of action taken. *See Perez*, 792 F.3d at 778-79 (collecting cases) ("allegations that a prison official refused to follow the advice of a medical specialist for a non-medical reason may at times constitute deliberate indifference"); *Holloway v.*

*Delaware Cnty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) (stating that a prison doctor "is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards"). Although a prison official may not continue a course of treatment he knows is blatantly ineffective, prisoners are not entitled to receive unqualified access to healthcare. *See id*. at 1073-74. A doctor may provide the care he feels is reasonable so long as it falls within a "range of acceptable courses based on prevailing standards in the field." *Id.* at 1073.

The viability of a Section 1983 claim turns in part on the nature of the alleged harm, in part on the role of the alleged actor, and in part on the type of relief sought. Section 1983 liability is premised primarily on individual liability of actors for harmful actions they personally took. Thus, to be liable under Section 1983 "an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). Monetary damages may be awarded for individual capacity claims. *See id.*

The doctrine of *respondeat superior* does not apply to Section 1983 claims; thus, a defendant must be personally liable for the deprivation of a constitutional right. A defendant will be deemed to have sufficient personal responsibility if "he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Thus, a supervisor may be liable for deliberate, reckless indifference to the misconduct of subordinates if it can be shown that the supervisor knew about the conduct and facilitated it, approved it, condoned it, or turned a blind eye to it for

fear of what they might see. *See id.* (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).

Objectively, Smith has identified an injury serious enough to pass threshold review because chronic and persistent head pain is a serious condition. *See Gutierrez*, 111 F.3d at 1369 (noting that a condition that causes chronic pain could be sufficient to state a claim for deliberate indifference). The subjective component of the deliberate indifference analysis will be conducted in turn with respect to each individual count, the involved defendants, and their alleged roles in providing care. *See Greeno*, 414 F.3d at 655-57.

**Count Three**

Typically a prison official will not be held responsible for the direct provision of medical care, however, if an official is given clear and detailed notice of insufficient care and fails to take any action to address the situation, that official may be held liable for deliberate indifference. *See Perez,* 792 F.3d at 781-82. Here, taking Smith's allegations as true, he gave Defendant Duncan both written and verbal notice of the insufficiency of his care. Smith's own factual allegations and the grievances he appended to his complaint suggest that Duncan did acknowledge his medical needs in some capacity by deeming them a non-emergency, but there is not sufficient factual information to determine if Duncan's action in doing so was deliberately indifferent. At the threshold screening stage, this claim must be allowed to proceed for development of a more comprehensive factual record regarding the sufficiency of Duncan's actions. *See id.* at 782 (finding that a claim could proceed beyond summary judgment with a comparable level of factual detail to that presented by Smith).

**Count Four**

Count Four will be allowed to proceed against Defendant Doctor Coe because it cannot

be determined at this juncture whether or not the actions he took were reasonable in light of professional standards. Prisoners are not entitled to their choice of treatment and doctors are not always required to follow the optimal course of treatment, but the care provided must be reasonable in light of professional medical norms. *See Holloway,* 700 F.3d at 1074. Doctor Coe declined to provide access to external MRI's and other treatment, but he did continue an ongoing course of attempting to treat Smith's pressure headaches with medication. The sufficiency and reasonableness of these decisions can only be assessed upon development of a more comprehensive factual record. Accordingly, Count Four will be allowed to proceed as to Defendant Coe.

**Count Five**

Count Five will be allowed to proceed against Defendant Cunningham for the same reasons that Count Three is being allowed to proceed. A more comprehensive factual record is necessary to determine if Defendant Cunningham, a non-medical supervisory official, acted with deliberate indifference to Smith's written complaints regarding his medical condition. Thus, Count Five will proceed as to Defendant Cunningham.

**Count Six**

Count Six also will be allowed to proceed because, like Counts 3 and 5, development of a more comprehensive factual record is necessary to assess the sufficiency of Defendant Tredway's response to Smith's grievances.

**Count Seven**

Finally, Count Seven will be dismissed without prejudice because Defendant Phillip Shicker was not properly named in the caption or the list of defendants. *See Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (for an individual to be considered a party he must

be specified in the caption). If Smith wishes to bring a deliberate indifference claim against Phillip Shicker for failing to respond to his grievances, he will need to amend his complaint consistent with Federal Rule of Civil Procedure 15. Rule 15 permits amendment one time "as a matter of course" within "21 days after serving it" or, "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." The Court expresses no opinion as to the merits of such a claim.

### DISPOSITION

**IT IS ORDERED** that this action shall receive further review as to **DEFENDANTS DUNCAN, COE, CUNNINGHAM, and TREDWAY**. The complaint shall be **DISMISSED without prejudice** as to **DEFENDANTS MARTIN PHILLIP and PHILLIP SHICKER** for failure to state a claim.

The Clerk of Court shall prepare for **DEFENDANTS DUNCAN, COE, CUNNINGHAM, and TREDWAY**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Smith. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Smith, the employer shall furnish the Clerk with the defendant's current work address, or, if not

known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Smith shall serve upon defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Smith shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Smith, and the judgment includes the payment of costs under § 1915, Smith will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Smith is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a

stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Smith is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  August 31, 2016**

*[Signature: Nancy J. Rosenstengel]*

**NANCY J. ROSENSTENGEL**
**United States District Judge**