IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| VINCENT E. SMITH<br><br>Plaintiff,<br><br>vs.<br><br>JOHN COE, STEVE DUNCAN, PHIL MARTIN, and WEXFORD HEALTH SERVICES, INC.,<br><br>Defendants. | ) | Case No. 3:16-CV-00913-NJR-DGW<br><br>Judge Nancy Rosenstengel<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT**

Pursuant to this Court's order of August 22, 2017, the Plaintiff, Vincent E. Smith, by his attorneys, Reed, Armstrong, Mudge & Morrissey, P.C., brings this First Amended Complaint against Defendants John Coe, Steve Duncan, and Phil Martin, in their individual and official capacities, and Wexford Health Services, Inc., and in support of his First Amended Complaint, states as follows:

**NATURE OF THE CASE AND JURISDICTION**

1. This is a civil action brought pursuant to 42 U.S.C. § 1983 seeking compensatory and punitive damages and injunctive relief against Defendants arising out of their deliberate indifference to Plaintiff's serious medical needs and committing acts, under color of state law, with the intent of violating Plaintiff's rights under the Eighth Amendment to the U.S. Constitution.

2. Defendants were, at all relevant times, obligated to provide medical care to incarcerated persons in Lawrence Correctional Center in Sumner, Illinois.

3. Despite Plaintiff's repeated and continued complaints of severe pain, requests for adequate medical care and treatment, and submission of grievances regarding the lack of care

and/or inappropriate care, Defendants were deliberately indifferent to Plaintiff's serious medical needs and failed to ensure that Plaintiff received timely, appropriate, and constitutionally adequate medical care and treatment for those serious medical needs.

4. On information and belief, the inappropriate conduct of Defendant Coe occurred in furtherance of the policies, customs, or procedures instituted by defendant Wexford Health Services, Inc. ("Wexford"), which contracts with the State of Illinois for the provision of health care services to persons in the custody of the Illinois Department of Corrections ("IDOC").

5. As a direct and proximate result of Defendants' deliberate indifference to Plaintiff's serious medical needs, Plaintiff suffered severe, prolonged, and unnecessary pain, from which he continues to suffer to the present day.

6. To this day, Plaintiff continues to be denied adequate medical care and treatment for his serious medical needs.

7. The Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 and § 1343(a).

8. Venue is appropriate in this jurisdiction pursuant to 28 U.S.C. § 1391, because the events and omissions giving rise to this action occurred in the Southern District of Illinois.

## PARTIES

9. Plaintiff Smith is, and at all times relevant has been, a resident of the State of Illinois and in the custody of the Illinois Department of Corrections, incarcerated at Lawrence Correctional Center in Sumner, Illinois.

10. Defendant Wexford is a corporation organized under the laws of the State of Florida, with its principal place of business in Pittsburgh, Pennsylvania and conducting business in the State of Illinois. Since at least 2006, Wexford has contracted to provide medical services

to inmates at IDOC facilities within the State of Illinois. At all relevant times, Wexford provided medical care to inmates at Lawrence Correctional Center. At all relevant times, Wexford acted under color of law when performing its contractual duties to provide medical care to inmates at IDOC facilities within the State of Illinois.

11. Defendant John Coe, M.D. is a licensed medical doctor and is, or formerly was, employed by Defendant Wexford and charged with providing medical care to inmates at Lawrence Correctional Center. Defendant Coe acted under color of state law in his employment with Wexford. Defendant Coe is liable in his individual capacity.

12. Defendant Duncan is the warden at Lawrence Correctional Center, where Plaintiff is currently incarcerated. Defendant Duncan acted under color of state law in depriving Plaintiff of his constitutional rights.

13. Defendant Martin is the health care administrator of Lawrence Correctional Center and is employed by Wexford. Defendant Martin is liable in his individual capacity.

## ALLEGATIONS COMMON TO ALL COUNTS

14. Plaintiff has been in IDOC custody since June 2, 2011. His anticipated parole date is May 22, 2027, and his anticipated discharge date is May 22, 2030.

15. At all relevant times, Wexford was contractually obligated to provide medical services at IDOC facilities. Wexford's contractual obligations included the obligation to provide medical care to the inmates at IDOC facilities, including Lawrence Correctional Center, and to ensure that all medical care provided was appropriate and adequate.

16. Wexford's contractual obligations include the responsibility to appoint an on-site Medical Director at each facility covered by the contract, to oversee all aspects of the health care program.

17. Wexford has promulgated written policies and procedures to guide the provision of health care to IDOC inmates.

18. Wexford's written policies and procedures required the on-site medical director to oversee the entire health services program at the relevant prisons, and specifically, to ensure the timely and efficient response to all inmates' health needs.

19. In addition to written policies, Wexford has established practices governing the provision of care to inmates, and those practices are so prevalent as to have the force of law.

**COUNT I-EIGHTH AMENDMENT VIOLATIONS**

20. The allegations of Paragraphs 1-19 are re-alleged and incorporated herein by reference.

21. Plaintiff suffers from severe, chronic headaches and associated symptoms.

22. Severe and chronic headaches, along with associated visual disturbances, dizziness, and other symptoms, are an objectively serious medical condition requiring treatment. Moreover, even a layperson would recognize that severe headache and associated visual disturbances, dizziness, and other symptoms is a serious medical condition requiring treatment.

23. In 2014, Plaintiff began suffering from severe headaches.

24. Plaintiff submitted a grievance dated September 17, 2014, complaining that Defendant Coe initially dismissed his complaints of headaches as being the product of an ingrown hair. Defendant Duncan's response to this grievance was that it was not an emergency and should be submitted in the normal manner.

25. On or around September 25, 2014, Plaintiff pressed the panic/emergency button in his cell, due to pressure in his head, dizziness, and shortness of breath. The nurse who examined Plaintiff on that date admonished him for using the emergency button and suggested

that he was suffering from heartburn. Plaintiff submitted a grievance dated September 25, 2014, in regard to the nurse's response. Defendant Duncan initially responded that the grievance was a non-emergency, and when submitted in the normal manner, the response was that Plaintiff was evaluated and scheduled to be seen by the "MD".

26. On October 16, 2014, Plaintiff was seen by Defendant Coe. Plaintiff inquired of Defendant Coe as to why he was not seen immediately following the emergency code on September 25, 2014, and Defendant Coe responded that he did not feel the situation was an emergency. Defendant Coe then recorded in Plaintiff's medical record that his headaches began after an "unreported" fight in January 2014; Plaintiff denies that this recordation is factually accurate. Defendant Coe determined that the arteries on the left side of Plaintiff's head were swollen, diagnosed Plaintiff with migraines, and prescribed prednisone.

27. Plaintiff submitted a grievance on October 17, 2014, regarding his visit with Defendant Coe the day before. In that grievance, Plaintiff requested evaluation by an outside specialist with regard to his head pressure and arm tingling. Again, Defendant Duncan initially rejected the grievance as being a non-emergency; no response was ever provided.

28. Plaintiff sought medical treatment from the health care unit on October 21, 2014, complaining of ongoing headaches. He was provided with three days' worth of acetaminophen and told to follow up with the doctor.

29. On October 24, 2014, Plaintiff was again seen by Defendant Coe. Defendant Coe noted that the arteries on the left side of Plaintiff's head were still swollen, and that he was still experiencing pain. Defendant Coe again made an inaccurate recordation of "unreported" head trauma in January 2014, and prescribed Topamax.

30. On November 2, 2014, Plaintiff sent a request slip to Defendant Duncan, regarding his concern about the Topamax prescription being for seizures and not being appropriate for the symptoms he was reporting, and further requesting imaging studies. There is no record of a response to this request slip.

31. On November 5, 2014, Plaintiff collapsed while in the shower, due to constant pressure on the left side of his head that he characterized as 10/10 pain, as well as associated dizziness. Plaintiff also stated that the Topamax was not relieving his symptoms. Plaintiff was given a medical permit for ice to apply to his head, and was issued an "e-pass" to see Defendant Coe on November 6, 2014.

32. On November 6, 2014, Defendant Coe was notified that Plaintiff had an e-pass for evaluation on that date, but that he was not seen. Defendant Coe chose to make Plaintiff wait until November 24, 2014 for his follow-up. Nevertheless, Plaintiff was not seen on November 24, 2014, due to "MD unavailability".

33. On November 22, 2014, Plaintiff sent a request slip to Defendant Coe, in which he related that the Topamax was not relieving the pressure in his head, that he fell in the shower, and that he requested a CT scan or MRI. There is no record of this request being answered.

34. Plaintiff filed an emergency grievance on December 4, 2014, regarding bulging blood vessels in his eyes, as well as pressure in his head that caused unbearable pain. Plaintiff also related that the medications prescribed by Defendant Coe were not working to relieve his headache pain. Furthermore, in this grievance, Plaintiff made Defendant Duncan aware of statements made to him by Defendant Coe, to the effect that payment for screening to determine the source of his headaches would not be approved. Defendant Duncan rejected the grievance as being a non-emergency, and no other response was provided.

35. Defendant Coe next saw Plaintiff on December 8, 2014, over a month after Plaintiff's collapse in the shower; nevertheless, Defendant Coe characterized this visit as a follow-up from the October 24 visit, and made no mention of the collapse in the shower. Defendant Coe noted that Plaintiff still suffered from pressure on the left side of his head, and continued the prescription of Topamax.

36. On January 6, 2015, Plaintiff again filed an emergency grievance, requesting screening to determine the source of his headache pain. In this grievance, Plaintiff related that he used ice to relieve some of the pain in his head, and that Defendant Coe persisted in prescribing Topamax or its generic equivalent. The headache pain was described as being an overwhelming pressure. Defendant Duncan deemed the grievance a non-emergency, and no response was ever provided.

37. On March 9, 2015, Plaintiff visited the health care unit and requested a renewal of his ice permit to assist with his left-sided headache pain. The permit was renewed for one day, and the staff inappropriately noted that the pain was due to a fall in the shower in November 2014.

38. On April 10, 2015, Plaintiff filed another grievance upon his discovery of the inaccurate information that Defendant Coe had recorded in Plaintiff's medical record; specifically, that Defendant Coe had recorded a non-existent fight from January 2014, on which he blamed Plaintiff's headaches. Plaintiff requested that the inaccurate information in his medical record be corrected. When the grievance was addressed with Defendant Coe, Defendant Coe stated only that he recorded what Plaintiff related to him.

39. On June 3, 2015, Plaintiff again visited the health care unit, complaining of left-sided pressure headaches, along with the new development of blurred vision. He related again

that Topamax was not relieving his symptoms. Plaintiff was referred to be seen by Defendant Coe.

40. Defendant Coe saw Plaintiff on June 8, 2015. Defendant Coe confronted Plaintiff about the April 2015 grievance at this visit. Plaintiff advised Defendant Coe at this appointment that the prescribed medications were not relieving his headache pain. Defendant Coe refused to order imaging tests for Plaintiff's headaches, and prescribed prednisone again. At this visit, Defendant Coe noted that Plaintiff could not tolerate light in his eyes, and that Plaintiff's scalp arteries were tender.

41. Plaintiff filed a grievance on June 9, 2015 regarding his June 8 visit with Defendant Coe and requesting that imaging be performed. No response was provided to this grievance.

42. Defendant Coe next saw Plaintiff on June 15, 2015. The notes from this visit indicate that Plaintiff's headaches were better and that they come and go, which was not accurate. Defendant Coe continued the prednisone prescription, and again diagnosed Plaintiff with migraines.

43. Plaintiff next saw Defendant Coe on June 26, 2015. Again, Defendant Coe noted that the prednisone was helpful (which it was not), but then noted that Plaintiff's headaches had returned to their prior strength. Defendant Coe noted that Plaintiff avoided light shining in his eyes, and noted tenderness to Plaintiff's scalp arteries. Defendant Coe recorded at this visit that Plaintiff requested a MRI or a neurology consult, but then noted that Plaintiff had been offered medication and that he could get it if he "changes his mind". Indeed, Plaintiff requested imaging tests from Defendant Coe, and Defendant Coe responded that Plaintiff needed a functional MRI, but that it was too expensive and Defendant Coe would not order it. When Plaintiff again asked

for a MRI, Defendant Coe responded that his time should be reserved for emergencies and that Plaintiff should leave the health care unit.

44. Plaintiff filed a grievance on June 26, 2015, regarding the visit of the same day with Defendant Coe. Plaintiff stated that his symptoms remained the same and requested in his grievance that he be provided with a MRI or a CT scan. No response was provided to this grievance. However, internal prison emails dated August 24 and 25, 2015 show that Counselor Strubhart made Defendant Martin aware of Plaintiff's ongoing complaints of extreme headaches, pressure, dizziness, blurred vision, stiff neck, and photophobia. Regarding the grievance of June 26, 2015 and the allegation that Defendant Coe falsified Plaintiff's medical records, Counselor Strubhart related to Defendant Martin that Defendant Coe was consulted about the totality of the allegations, and that Defendant Coe's response was "If you have a problem take nurse sick call". Defendant Martin responded that Defendant Coe's "medical determination" was that Plaintiff did not need imaging tests, and that he could have medication if he wanted it.

45. By request, Plaintiff was seen by physician's assistant T. James on September 29, 2015. P.A. James noted an occipital hematoma and the ongoing nature of Plaintiff's headaches, as well as the fact that ice provided some relief. P.A. James also noted that Plaintiff had poor vision along his left edge. P.A. James ordered an X-ray, which was negative, and also prescribed Imitrex. At a follow-up visit with P.A. James on October 13, 2015, Mr. James noted that the Imitrex was not relieving Plaintiff's symptoms, and noted his suspicion that Plaintiff may be suffering from cluster headaches.

46. Plaintiff was next seen by Defendant Coe on October 29, 2015, for a headache follow-up. Defendant Coe inaccurately recorded that Plaintiff "now admits to many head

injuries". Further, Defendant Coe disregarded P.A. James's observations, persisted in diagnosing Plaintiff as suffering from migraines, and prescribed Tylenol and Topamax.

47. Following the October 2015 visit with Defendant Coe, Plaintiff prepared a notarized affidavit, in which he recorded that Defendant Coe again confronted Plaintiff about the grievance regarding falsification of Plaintiff's medical records. Defendant Coe persisted in examining Plaintiff simply by pressing on the side of his head and shining a light in his eyes. Further, at this visit, Defendant Coe again refused to order a MRI for Plaintiff.

48. Plaintiff continued to complain to the medical staff of headaches at visits in January, February, March, and April of 2016. By April 2016, Plaintiff related that his headaches were increasing in severity, that they were located on the left side of his head, that he suffered from dizziness and photophobia, and that the current treatment regimen was not working. Plaintiff further related that he suffered from blurred vision, as well as double vision, and that Topamax was making him shake.

49. Plaintiff was again seen by P.A. James on April 15, 2016. At that time, Mr. James noted the failure of Topamax, Tylenol, metroprolol, Excedrin Migraine, and ibuprofen. Mr. James further noted that ice provided some relief of symptoms. At this visit, Mr. James referred Plaintiff to Defendant Coe for daily headaches unresolving after multiple medication regimens, and Mr. James specifically stated that Defendant Coe should consider collegial review for imaging tests.

50. On information and belief, collegial review is a process mandated by Defendant Wexford that determines whether inmates will have access to certain kinds of treatments.

51. Defendant Coe saw Plaintiff on April 20, 2016. Defendant Coe persisted in his opinion that Plaintiff suffered from migraines caused by head trauma, and prescribed Motrin and

Depakote. Defendant Coe took no action with regard to P.A. James's recommendation that collegial review be considered for imaging tests.

52. Plaintiff was unable to take Depakote due to a serious allergic reaction, including shakiness and bladder spasms.

53. On May 6, 2016, Defendant Coe again saw Plaintiff. After noting that Plaintiff could not take Depakote, Defendant Coe persisted in the previously failed medical regimen by again prescribing Topamax to Plaintiff.

54. On June 6, 2016, Defendant Coe again saw Plaintiff. Again, Defendant Coe noted that Plaintiff still suffered from headaches, and noted that Plaintiff appeared tired. Nevertheless, Defendant Coe took no further action in regard to Plaintiff's headaches.

55. Plaintiff continues to visit the health care unit, complaining of headaches, to the present day.

56. Defendant Coe, despite having the authority to do so, took no corrective action to adequately address Plaintiff severe headaches. Instead, Defendant Coe persisted in a failed course of purported treatment, consisting of duplicative examinations and multiple attempts at medications, all of which failed to resolve Plaintiff's symptoms.

57. Defendant Coe's persistence with ineffective and inadequate attempts at treatment constitutes a substantial departure from accepted medical judgment, standards, and practices.

58. Plaintiff wrote grievances and a request slip to Defendant Duncan, and also spoke personally to Defendant Duncan several times, requesting assistance with his serious medical needs and the fact that he was not receiving adequate treatment for those needs.

59. Defendant Duncan knew that Plaintiff suffered from a serious medical condition requiring treatment.

60. Defendant Duncan, despite having the authority to do so, took no corrective action to address Plaintiff's severe headaches and associated symptoms.

61. Defendant Martin, through Plaintiff's grievance processes, was made aware that Plaintiff had a serious medical condition requiring treatment, and that Plaintiff's medical needs were not being adequately met.

62. Defendant Martin, despite having the authority to do so, took no corrective action to address Plaintiff's severe headaches and associated symptoms.

63. Defendant Wexford has the authority and ability to effect some of the injunctive relief that Plaintiff now seeks.

64. On information and belief, Wexford has an actual policy or practice of delaying medical treatment involving severe headaches and pain in general, and that policy or practice caused Plaintiff unnecessary pain and suffering from 2014 to the present.

65. On information and belief, Wexford's policy or practice includes delaying delivery of medical permits, failing to administer medication or administering ineffective medication, delaying the scheduling of medical appointments, and failing to order appropriate diagnostic testing for inmates.

66. On information and belief, Wexford knew at the time and knows now that its policies or practices cause unnecessary pain and substantially delay medical treatment.

67. Wexford's policies and practices caused Plaintiff harm because Defendant Coe, as its physician employee who was deliberately indifferent to Plaintiff's serious medical needs, was following Wexford's policies and practices.

68. While contractually obligated to provide and oversee the provision of adequate medical care to IDOC inmates, Wexford sanctioned a policy and practice of failing to fulfill or

causing to be fulfilled its contractual obligations to ensure that medical services were adequately and appropriately furnished.

69. Plaintiff specifically joins Defendant Wexford to this count under a theory of *respondeat superior* liability. In doing so, Plaintiff seeks a good-faith change in the law as discussed in *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782 (7th Cir. 2014) and *Perez v. Fenoglio*, 792 F.3d 768, 780 n.5 (7th Cir. 2015), and does not bring this count for the purposes of harassment.

70. All Defendants knew of Plaintiff's serious medical needs. All Defendants knew about the conduct that constituted deliberate indifference to Plaintiff's serious medical needs and facilitated, approved, and/or ignored it. All Defendants actually knew of a substantial risk of serious harm to Plaintiff, and they consciously disregarded this risk by failing to rake reasonable measures to deal with that harm. All Defendants were thus deliberately indifferent to Plaintiff's serious medical needs, in violation of the Eighth Amendment.

71. Defendant Duncan has the authority to effect the injunctive relief sought.

72. Plaintiff suffered and continues to suffer from a serious medical need, in that he has had, and continues to have, severe, chronic headaches and associated symptoms.

73. To date, Plaintiff has not been provided with appropriate diagnostic testing to determine the origin of his severe headaches, nor has he been provided with an adequate regimen to manage his unbearable pain.

74. As a result of Defendants' conduct, policies, and practices, Plaintiff has suffered and will continue to suffer physical injuries and pain and suffering, all in violation of Plaintiff's Eighth Amendment rights.

**JURY DEMAND**

Plaintiff demands a jury on all issues triable to a jury.

**RELIEF**

WHEREFORE, Plaintiff, Vincent E. Smith, requests that the Court enter judgment in his favor, awarding the following relief:

A. An injunction ordering Defendant Wexford to provide adequate treatment for Plaintiff's medical needs, including that Plaintiff be sent for magnetic resonance imaging (MRI) for his severe headaches; and that Plaintiff be given adequate and effective pain management for his headaches;

B. Actual, consequential, punitive, and exemplary damages in an amount to be proven at trial, plus pre- and post-judgment interest;

C. Plaintiff's costs and attorneys' fees, including interest;

D. Any other relief that the Court deems just and proper.

Respectfully submitted,

REED, ARMSTRONG,
MUDGE & MORRISSEY, P.C.

By: /s/ Jennifer M. Wagner

Martin K. Morrissey, #06191536
Jennifer M. Wagner, #06307253
115 North Buchanan, P.O. Box 368
Edwardsville, IL 62025
(618) 656-0257
(618) 692-4416 – Fax
mmorrissey@reedarmstrong.com
jwagner@reedarmstrong.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing(s) to the following:

Mr. Rodney M. Sharp
Ms. Ashley M. Walker
Sandberg, Phoenix, et al.
600 Washington Ave., 15th Floor
St. Louis, MO 63101-1313
Telephone: (314) 425-4906
Facsimile: (314) 241-7604
sblank@sandbergphoenix.com
*Attorney for John Coe, Lorie Cunningham*

Ms. Ayesha Patel
Mr. Jason R. Adams
Assistant Attorney General
500 South Second Street
Springfield, IL 62701
Telephone: (217) 782-9014
Facsimile: (217) 782-8767
jadams@atg.state.il.us
*Attorney for Anne Tredway, Steve Duncan*

And I hereby certify that on November 13, 2017, I mailed by United States Postal Service the document(s) to the following non-CM/ECF participants:

Vincent E. Smith, #R-11677
Lawrence Correctional Center
Inmate Mail/Parcels
10930 Lawrence Road
Sumner, IL 62466

REED, ARMSTRONG,
MUDGE & MORRISSEY, P.C.

By: /s/ Jennifer M. Wagner
Jennifer M. Wagner, #06307253
115 North Buchanan, P.O. Box 368
Edwardsville, IL 62025
(618) 656-0257
(618) 692-4416 – Fax
jwagner@reedarmstrong.com