IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VINCENT SMITH, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 3:16-CV-913-NJR-DGW |
| JOHN COE, WEXFORD HEALTH SOURCES, INC., STEVE DUNCAN, PHIL MARTIN, and VICTOR CALLOWAY, | ) ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Report and Recommendation of Magistrate Judge Donald G. Wilkerson (Doc. 159), which recommends granting the motion for preliminary injunction filed by Plaintiff Vincent Smith (Doc. 120). The Report and Recommendation was entered on October 5, 2018. Wexford Health Sources, Inc.[1] filed an objection on October 22, 2018 (Doc. 170), to which Smith responded on November 1, 2018 (Doc. 176). Defendants Steve Duncan, Phil Martin, and Victor Calloway filed an objection on November 14, 2018 (Doc. 180), to which Smith responded on November 16, 2018 (Doc. 182). For the following reasons, the Court adopts the Report and Recommendation and grants the motion for preliminary injunction.

### BACKGROUND

Smith, an inmate currently housed at Danville Correctional Center, filed a

---

[1] The Clerk's Office is **DIRECTED** to update the docket sheet to reflect the true and accurate name of the following defendant: "Wexford Health Services, Inc." should be "Wexford Health Sources, Inc."

complaint on July 5, 2016, for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 (Doc. 1 in Case No. 16-cv-745-MJR-SCW). Several counts in that complaint were severed to form this case, which alleged claims of deliberate indifference to a serious medical need and failure to respond to grievances regarding Smith's medical condition. The Court conducted a threshold review of the severed complaint and determined that Smith could proceed on his deliberate indifference to a serious medical need claims, but the Court dismissed without prejudice his failure to respond to grievances claim (Doc. 6). Smith subsequently amended his complaint two times (Docs. 76 and 107). He currently proceeds on claims for deliberate indifference to a serious medical need against Defendants Coe (a medical doctor employed by Wexford and working at Lawrence Correctional Center), Duncan (the warden at Lawrence Correctional Center), and Martin (the healthcare administrator at Lawrence Correctional Center), and a policy and practice claim against Wexford (Doc. 107). Smith seeks damages, as well as injunctive relief.

Specifically, in the Second Amended Complaint, Smith alleges that he began suffering from severe headaches in 2014 (Doc. 107, p. 5). Along with the headaches, he often experienced head pressure and arm tingling (*Id.*, p. 6). Over time, he was treated by Defendant Coe with various medications, some of which helped to reduce the pain, some of which did not (*Id.*). Defendant Coe noted that the arteries on the left side of Smith's head were swollen (*Id.*). At one point in time, around November 2014, Smith collapsed in the shower, due to the constant pressure on the left side of his head that he characterized as 10/10 pain, as well as associated dizziness (*Id.*). Around June 2015, Smith started

experiencing blurred vision (*Id.*, p. 8). He received optometric examinations by Dr. Brummell on November 10, 2015 and March 16, 2016 (Doc. 145-1, p. 50-53).

Smith continued to complain of headaches increasing in severity on the left side of his head, dizziness and photophobia and, in April 15, 2016, Physician's Assistant James referred Smith to Defendant Coe for daily headaches that were unresolved after multiple medication regimens and stated that Defendant Coe should consider collegial review for imaging tests (Doc. 107, p. 11). Defendant Coe has changed Smith's medications over the course of time, and has conducted physical exams, including a Romberg exam (a type of neurological performance test), but has never ordered an MRI (*Id.*; *see also* Doc. 145-1, p. 33; *see also* Doc. 180-3, p. 40). In January 2018, Smith was transferred to Danville Correctional Center, where he continued to suffer from severe, chronic headaches and associated symptoms (Doc. 107, p. 11- 14).

Smith sues Defendant Coe for persisting in an ineffective and inadequate course of treatment constituting a substantial departure from accepted medical judgment, standards, and practices (*Id.*, p. 12). He also sues Defendants Duncan and Martin because they were made aware of his serious medical condition requiring treatment but took no corrective action to address it (*Id.*). Smith also sues Wexford for having an "actual policy and practice of delaying medical treatment involving severe headaches and pain in general, and that policy or practice caused [him] unnecessary pain and suffering from 2014 to the present." (*Id.*) Smith also sues Defendant Calloway in order to effectuate the injunctive relief sought in this action.

On May 17, 2018, Smith filed a motion for preliminary injunction (Doc. 120). In his

motion, Smith asks the Court to issue an order requiring Defendants to facilitate a consultation with a neurologist not affiliated with Wexford and requiring Defendants to immediately provide an ice permit to Smith for partial relief of his headaches, with an allowance for an indefinite provision of that permit (*Id.*).

On October 3, 2018, Magistrate Judge Wilkerson held an evidentiary hearing on Smith's motion for injunctive relief. At the hearing, Smith indicated that he was issued an ice permit (and Excedrin) that morning. He testified that, as of his transfer to Danville Correctional Center in January 2018, the pain has not subsided, and his vision in his left eye has continued to deteriorate. On a scale of one to ten, his pain at the time of the hearing was at an 8.5-9/10 (*Id.*). Smith also testified that, after he was transferred to Danville Correctional Center, he asked for an ice permit and Excedrin to reduce his headache pain and he was told to put in requests to see the doctor. From January 2018 through September 2018, he continued to put in requests to see the doctor regarding his headaches but received no response.

On cross-examination, defense counsel asked Smith about his prior deposition testimony where he stated that he could not recall the date of the first time he went to the healthcare unit about his headaches or with whom he spoke about his headaches after his transfer to Danville Correctional Center. Smith did not dispute that testimony. Defense counsel also pointed out that Smith has refused sick call on several occasions in 2018. Smith testified that the reason he has refused sick call is because he gets signed up for sick call in order to get medications, but if he already has the medication at that time, then he signs a sick call refusal form.

# THE REPORT AND RECOMMENDATION

Magistrate Judge Wilkerson found Smith's testimony regarding his medical issues to be credible. Magistrate Judge Wilkerson concluded that it is undisputed that Smith suffers from chronic headaches, tenderness in the arteries in his scalp, photophobia (sensitivity to light), and phonophobia (sensitivities to loud noises) (Doc. 159, p. 4). Magistrate Judge Wilkerson further observed that Smith testified at the hearing that he has daily pain, the vision in his left eye is continuing to deteriorate, and he continues to suffer from blurred and double vision (*Id.*). As a result, Magistrate Judge Wilkerson found that Smith has a more than negligible chance of showing he suffers from an objectively serious medical condition (*Id.*, p. 5).

Magistrate Judge Wilkerson also found that Smith has presented evidence that he suffered from these chronic debilitating headaches for years without relief (*Id.*). Although Smith was prescribed various different medications, Magistrate Judge Wilkerson found that none of them gave him relief (*Id.*). On April 15, 2016, Physician's Assistant James suggested collegial reviewing for imaging should be considered given Smith's daily headaches and unresponsiveness to medication (*Id.*, p. 6). Magistrate Judge Wilkerson noted that Smith testified at his deposition that he pleaded with Coe for an MRI or a CAT scan, but Coe told him that he could not order an MRI due to the budget (*Id.*).

In addition to showing a reasonable likelihood of success on the merits of his deliberate indifference claim, Magistrate Judge Wilkerson concluded that Smith has demonstrated irreparable harm absent an injunction in the form of his constant pain, as well as his blurred vision and sensitivity to light and sound (*Id.*, p. 7). Furthermore, a

referral to an outside neurologist to determine the cause of Smith's constant pain would not burden Defendants, while the cost to Smith of not seeing a specialist is high. Given these factors, Magistrate Judge Wilkerson recommended that this Court order Smith to be seen by an outside neurologist within 30 days.

## DISCUSSION

Where timely objections are filed, this Court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). If no objection is made, the Court reviews the Report and Recommendation only for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). In reviewing the Report and Recommendation, the Court must look at all of the evidence contained in the record and give fresh consideration to those issues to which specific objections have been made. *Id.* (quoting 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)). The Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2948 (5th ed. 1995)). The purpose of an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). To be granted an injunction, a plaintiff must demonstrate a reasonable likelihood of success on the merits,

no adequate remedy at law, and irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether the "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). "The absence of an adequate remedy at law is a precondition to any form of equitable relief." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). The requirement of irreparable harm eliminates those cases where, although the ultimate relief sought is equitable, the plaintiff can wait until the end of trial to get that relief. *Id.* Only if the plaintiff will suffer irreparable harm in the interim—that is, before a final judgment—can he obtain a preliminary injunction. *Id.*

Once a plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success on the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665.

Here, Wexford objects to the Report and Recommendation arguing that Magistrate Judge Wilkerson mistakenly concluded that the medications prescribed to Smith did not provide him with any relief, when in fact Smith has admitted that Prednisone and Excedrin have provided him with some relief. Wexford also clarifies that Smith was provided an optometric examination on November 10, 2015. Wexford reiterates that cost

was not a factor in Defendant Coe's decision not to treat Smith with an MRI, but it was based on his examination of Smith, which included a neurological exam, and Smith's own actions. In light of all of this, Dr. Coe believes that an MRI is not clinically indicated.

Wexford also argues that Smith went months without any complaint of headaches, and he failed to independently seek treatment for his headaches immediately after arriving at Danville Correctional Center. Wexford also argues that it was clear error for Magistrate Judge Wilkerson to conclude that Smith does not have an adequate remedy at law, pointing out that the Court has the ability to grant such injunctive relief at the close of the case, if warranted, and trial is only a couple months away. Lastly, Wexford argues that the balance of harms do not support granting the motion because Smith finds relief with Excedrin and ice, which he currently has at his disposal. Moreover, Wexford argues that Magistrate Judge Wilkerson overlooked Smith's "attempt to have this Court order Wexford to facilitate an outside neurologist to examine him as a clear attempt[sic] to obtain an expert witness in this case." (Doc. 170, p. 7).

Defendants Duncan, Martin, and Calloway (hereafter "IDOC Defendants") object to Magistrate Judge Wilkerson's Report and Recommendation for the same reasons set forth in their motion for summary judgment, thereby incorporating those arguments into their objection. Specifically, and similar to Wexford's arguments, the IDOC Defendants assert that Smith has failed to show current irreparable harm, that Smith has not provided evidence that Defendant Coe was deliberately indifferent to his medical needs in determining that imaging was unnecessary, and he has not provided evidence that Defendants Martin and Duncan turned a blind eye to Smith's treatment.

The Court disagrees with Defendants' assertion that Smith has failed to demonstrate a reasonable likelihood of success on the merits of his Second Amended Complaint. Defendants question the severity of Smith's condition by pointing out that medications have provided him with some relief and that he went for periods of time without complaining of headache pain. Although medications have *reduced* his pain (Excedrin and ice appear to help him the most), his headaches keep coming back. As Smith testified at the hearing, the vision in his left eye has continued to deteriorate. At the time of the hearing, his pain was at an 8.5-9 out of 10.

Wexford cites to various periods of time where there are no documented complaints of headache pain or associated symptoms in the medical records. Specifically, Wexford argues that from December 8, 2014 through March 9, 2015, Smith did not make any complaints of migraines or associated symptoms. The Court disagrees that this shows that Smith is being disingenuous about his medical issues or that it establishes that Smith was not experiencing any headache pain or associated symptoms. For example, the medical records show that, on November 5, 2014, Smith complained of pressure on the side of his head (Doc. 145-1, p. 1). Wexford also argues that between March 9, 2015 and June 8, 2015, Smith did not make any complaints regarding headaches. The medical records show, however, that on June 3, 2015, Smith complained of pressure on the left side of his head and blurry vision (Doc. 145-1, p. 21).

As to Wexford's argument that Smith did not request an ice permit once he was transferred to Danville Correctional Center, Smith testified that he continued to write request slips to see the doctor regarding his headaches but received no response. Smith

further indicated that, although he had an ice permit issued in May 2017 at Lawrence Correctional Center, he did not receive an ice pack after his transfer to Danville Correctional Center until the morning of his hearing on October 3, 2018. A medical record generated at Danville Correctional Center on January 17, 2018 contains a notation of a headache complaint (Doc. 170-2, p. 148). Overall, the Court finds that Smith has a greater than negligible chance of success in establishing that he suffers from an objectively serious medical condition.

As to the deliberate indifference prong, Smith has presented evidence that he suffers from headaches that cause him severe pain. Although a combination of ice and medication provide him with some relief at times, the headaches keep recurring. Smith states that Defendant Coe told him he could not order an MRI due to the budget (Doc. 107, p. 9). A situation that "might establish a departure from minimally competent medical judgment is where a prison official persists in a course of treatment known to be ineffective." *Petties v. Carter*, 836 F.3d 722, 729-730 (7th Cir. 2016). "While the cost of treatment is a factor in determining what constitutes adequate, minimum-level care, medical personnel cannot simply resort to an easier course of treatment they know is ineffective." *Id.* at 730. The facts presented demonstrate that Smith has a reasonable likelihood of success in establishing that Defendant Coe resorted to an easier course of treatment known to be ineffective and that Defendants Martin and Duncan turned a blind eye to this treatment.

Likewise, Smith's continued headache pain and deteriorating eyesight evince a need for specialized treatment, even if only—at this point in time—it is in the form of a

consultation. Smith's motion for preliminary injunction has been delayed already and resolution of the recently filed motions for summary judgment that are not yet fully briefed could potentially delay the trial date. The cost to Defendants of sending Smith to a specialist is surely less than the cost that will be incurred by Smith if he does not see a specialist, in the form of his ongoing pain and deteriorating eyesight.

After reviewing the evidence, the Court agrees with Magistrate Judge Wilkerson that Smith has established a reasonable likelihood of success on the merits of his case, that he faces irreparable harm, that he has no adequate remedy at law, and that the balance of equities warrants relief. Accordingly, Smith is entitled to preliminary injunctive relief.

## Conclusion

For these reasons, the Court **OVERRULES** Defendants' objections (Docs. 170 and 180) and **ADOPTS** the Report and Recommendation of Magistrate Judge Wilkerson (Doc. 135). Plaintiff Vincent Smith's motion for preliminary injunction (Doc. 170) is **GRANTED**.

**IT IS ORDERED** that Defendants **SHALL** schedule Smith to be evaluated by an outside neurologist within **45 days** of this Order (on or before **January 7, 2019**). Immediately after scheduling the consultation, Defendants shall notify the Court of the name of the specialist, and the time and place of such consultation. Within **7 days** of the consultation, Defendants shall provide a notice to the Court indicating the specialist's recommendations and course of treatment, if any. In doing so, Defendants shall inform the Court when and how the treatment, if any, will be carried out.

Finally, the Clerk's Office is **DIRECTED** to update the docket sheet as set forth footnote 1.

**IT IS SO ORDERED.**

DATED: November 21, 2018

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**